1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**DISTRICT OF NEVADA**

8

\* \* \*

9

Nigel Ray Lachey,

Case No. 2:20-cv-01438-BNW

10

Plaintiff,

**ORDER**

11

v.

12

Kilolo Kijakazi,*

13

Defendant.

14

15      This case involves review of an administrative action by the Commissioner of Social

16   Security denying *pro se* Plaintiff[1] Nigel Ray Lachey's application for supplemental security

17   income under Title XVI of the Social Security Act.[2] The Court reviewed Plaintiff's motion to

18   remand (ECF No. 31), filed April 28, 2021,[3] and the Commissioner's cross-motion to affirm and

19   response to Plaintiff's motion to remand (ECF Nos. 37, 38), filed July 27, 2021. Plaintiff replied

20   on August 13, 2021. *See* ECF No. 39.

21      The parties consented to the case being heard by a magistrate judge in accordance with 28

22   U.S.C. § 636(c) on August 12, 2020. ECF No. 3. This matter was then assigned to the

23   undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id.*

24

25      * Kilolo Kijakazi has been substituted for her predecessor in office, Andrew Saul, pursuant to Federal Rule of Civil Procedure 25(d).

26      [1] The Court will use claimant and plaintiff throughout this Order. The terms are interchangeable for the purposes of this Order.

27      [2] Although Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, he later withdrew this application. *See* ECF No. 29-1 at 25.

28      [3] Plaintiff also filed ECF No. 33, arguing that Defendant had failed to timely respond to Plaintiff's motion to reverse the ALJ's decision. ECF No. 33 at 2.

## I.     BACKGROUND

### 1.     Procedural History

On December 22, 2016, Plaintiff applied for disability benefits[4] and supplemental security income under Titles II and XVI of the Act, respectively, alleging an onset date[5] of June 20, 2011.[6] ECF No. 29-1[7] at 314–20; 321–29. His claim was denied initially and on reconsideration. *Id*. at 178–85; 192–99.

A hearing was held before an Administrative Law Judge ("ALJ") on November 18, 2019.[8] *Id*. at 58–102. On December 20, 2019, ALJ Barry H. Jenkins issued a decision finding that Plaintiff was not disabled. *Id*. at 22–42. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on May 28, 2020. *Id*. at 7–12. Plaintiff, on August 4, 2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g). *See* IFP App. (ECF No. 1).

## II.     DISCUSSION

### 1.     Standard of Review

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United

---

[4] Plaintiff later withdrew his application for disability benefits but maintained his application for supplemental security income. *See* ECF No. 29-1 at 25.

[5] Plaintiff amended the alleged onset date of disability from June 20, 2011 to October 12, 2016. ECF No. 29-1 at 350.

[6] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. Compare 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) with 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).

[7] ECF No. 29 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 29).) All citations to the Administrative Record will use the CM/ECF page numbers.

[8] Plaintiff had an initial hearing on June 21, 2019, but it was postponed by the ALJ to allow him to find representation. *See* ECF No. 29-1 at 50–57.

1    States for the judicial district in which the plaintiff resides." The court may enter "upon the

2    pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

3    decision of the Commissioner of Social Security, with or without remanding the cause for a

4    rehearing." 42 U.S.C. § 405(g).

5         The Commissioner's findings of fact are conclusive if supported by substantial evidence.

6    *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's

7    findings may be set aside if they are based on legal error or not supported by substantial evidence.

8    *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

9    278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a

10   mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

11   might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

12   Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining

13   whether the Commissioner's findings are supported by substantial evidence, the court "must

14   review the administrative record as a whole, weighing both the evidence that supports and the

15   evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

16   720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

17        Under the substantial evidence test, findings must be upheld if supported by inferences

18   reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

19   When the evidence will support more than one rational interpretation, the court must defer to the

20   Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten

21   v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

22   before the court is not whether the Commissioner could reasonably have reached a different

23   conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on

24   the ALJ to make specific findings so that the court does not speculate as to the basis of the

25   findings when determining if the Commissioner's decision is supported by substantial evidence.

26   Mere cursory findings of fact without explicit statements as to what portions of the evidence were

27   accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

28   The ALJ's findings "should be as comprehensive and analytical as feasible, and where

1  appropriate, should include a statement of subordinate factual foundations on which the ultimate

2  factual conclusions are based." *Id.*

3  **2.   Disability Evaluation Process**

4  The individual seeking disability benefits has the initial burden of proving disability.

5  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

6  demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

7  determinable physical or mental impairment which can be expected . . . to last for a continuous

8  period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

9  must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R.

10  § 404.1514. If the individual establishes an inability to perform her prior work, then the burden

11  shifts to the Commissioner to show that the individual can perform other substantial gainful work

12  that exists in the national economy. *Reddick*, 157 F.3d at 721.

13  The ALJ follows a five-step sequential evaluation process in determining whether an

14  individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If

15  at any step the ALJ determines that he can make a finding of disability or non-disability, a

16  determination will be made, and no further evaluation is required. *See* 20 C.F.R.

17  § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to

18  determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R.

19  § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves

20  doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If

21  the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not

22  engaged in SGA, then the analysis proceeds to step two.

23  Step two addresses whether the individual has a medically determinable impairment that

24  is severe or a combination of impairments that significantly limits him from performing basic

25  work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe

26  when medical and other evidence establish only a slight abnormality or a combination of slight

27  abnormalities that would have no more than a minimal effect on the individual's ability to work.

28

*Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[9] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

---

[9] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. ECF No. 29-1 at 28–41.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 12, 2016. *Id*. at 28.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: disorder of the cervical and lumbar spine; asthma; bipolar disorder; adjustment disorder; affective/mood disorder; anxiety-related disorder; post-traumatic stress disorder; and personality disorder. *Id*. He further found that Plaintiff's insomnia, foot fungus, history of inguinal hernia and migraines, history of learning disabilities, history of alcohol abuse, and history of hearing loss were non-severe. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically citing to 12.04–12.08 and 12.15. *Id*. at 28–34.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform light work with the following exceptions: He can stand and walk for four hours; he can occasionally perform all posturals and frequently, but not continuously, reach bilaterally in all planes; he must avoid concentrated exposure to chemicals and pulmonary irritants such as smoke, dust, fumes, odors, gases, and poorly ventilated areas; he must avoid concentrated exposure to hazardous machinery, unprotected heights, and operational control of moving machinery; and he is limited to simple tasks typical of unskilled occupations with no production rate pace work, only occasional interaction with supervisors and coworkers, and no interaction with the public. *Id*. at 33.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work. *Id*. at 41.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that he can perform. *Id*. at 39, 41. Specifically, he found that Plaintiff can work as an assembler, inspector, packager, and sorter. *Id*. at 39. The ALJ then concluded that Plaintiff was not under a disability at any time from October 12, 2016 through the date of his decision. *Id*.

**3.    Analysis**

**a.   Whether the ALJ erred in finding that Plaintiff's impairments do not meet or medically equal the severity of Listings 12.04**

**i.    The ALJ's decision**

The ALJ found that the "severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.05, 12.06, 12.07, 12.08, 12.15, or any other Listings." ECF No. 29-1 at 28. Specifically, he found that Plaintiff's mental health impairments did not meet the Paragraph A criteria because "the claimant is able to participate in standardized testing of intellectual functioning, he is not dependent upon others for his personal needs, and there is no evidence of any cognitive disorder at the present." *Id*. at 34.

The ALJ also found that Plaintiff's impairments did not meet the Paragraph B criteria because Plaintiff experienced only mild and moderate limitations in the four categories (i.e.,

understanding, remembering, or applying information; interacting with others; concentrating,

persisting, or maintaining pace; and adapting or managing oneself). *Id*. at 30–31. According to the

ALJ, Plaintiff's impairments further did not meet the Paragraph B criteria because "there is no

evidence of the claimant's full scale IQ score or verbal IQ score . . . and there is no evidence of a

current cognitive disorder." *Id*. at 33.

The ALJ also found that Plaintiff's impairments did not meet the Paragraph C criteria,

explaining that the "record does not establish that the claimant has only marginal adjustment, that

is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are

not already part of the claimant's daily life." *Id*. at 34.

### ii.   The parties' arguments

Plaintiff argues that he is "seriously mentally ill and meets the criteria" for Listing 12.04.

ECF No. 31 at 1. Plaintiff relies on Dr. Gustavo Franza's December 2016 determination that

Plaintiff has a severe mental illness. *Id*. at 1-2; *see also* ECF No. 29-2 at 61–64. He also notes that

his "diagnoses and treatment have continued for more than 2 years . . . which meets" the

Paragraph C criteria. *Id*. at 2. Further, Plaintiff argues that if the ALJ assigned greater weight to

treating physician Matthew Doust's opinion, the ALJ would have found that Plaintiff also meets

the Paragraph B criteria.[10] *Id*. at 3–4.

The Commissioner concedes that "Plaintiff's mental impairments meet the requirements

of Paragraph A, including medically determinable impairments of a depressive disorder and

bipolar disorder . . . ." ECF No. 38 at 12. But she argues that Plaintiff's mental health

impairments do not meet the requirements of either Paragraph B or C of Listing 12.04. *Id*.

According to the Commissioner, Plaintiff's diagnoses, treatment lasting more than two years, and

Dr. Franza's severe mental illness determination are not sufficient to satisfy the criteria for either

Paragraph B or C, and with respect to the Paragraph C criteria, she focuses on how Plaintiff "does

not cite evidence of 'marginal adjustment[.]'" *Id*. at 12, 15. The Commissioner also argues that

Plaintiff never raised the issue before either the ALJ or the Appeals Council that he met Listing

---

[10] As will be addressed in the section discussing how the ALJ weighed the medical opinion evidence, the Court does not find that the ALJ erred with respect to discounting Dr. Doust's opinion.

12.04 and that it is his burden to establish that he meetings the Listing. *Id*. at 16. Finally, she states that Plaintiff does meet the criteria for Listing 12.05. *Id*. at 13.

In his reply, Plaintiff argues that he meets the Paragraph A and B criteria for Listing 12.04, as evidenced by Dr. Franza's severe mental illness determination—a determination with which another psychologist agreed. ECF No. 39 at 5. He also adds, but without much elaboration, that his "treating source records . . . do show that the requirements for paragraphs B and C are met." *Id*. at 7.

### iii.   Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal Listing 12.04

At step three, the ALJ determines whether a plaintiff's impairments, individually or in combination, meet or equal a Listing. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

An impairment *meets* a Listing if it meets all the criteria of a listed impairment. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment equals a Listing if the medical findings are equal in severity and duration to all the criteria of a listed impairment. *See Sullivan*, 493 U.S. at 531.

"Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan*, 493 U.S. at 532). Put another way, a plaintiff must meet strict standards to meet or equal a Listing because doing so will result in a finding of disability. See *id*.; 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).

"If a [plaintiff] suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the [plaintiff's] impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). However, "'[m]edical equivalence must be based on medical findings[,]'" and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. § 404.1526); 20 C.F.R. § 416.926(a). Additionally, an impairment or

1    combination of impairments that manifests only some of the criteria, no matter how severely,

2    does not qualify. *Sullivan*, 493 U.S. at 530.

3         "An ALJ must evaluate the relevant evidence before concluding that a [plaintiff's]

4    impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th

5    Cir. 2001). The ALJ is not, however, required to discuss the evidence supporting the step three

6    determination in a "Step Three Findings" section itself. *Id*. at 513. Instead, the ALJ can meet this

7    requirement by discussing the relevant evidence supporting the step three determination anywhere

8    in the decision. *Id*. Moreover, the plaintiff has the burden of proving and setting forth the

9    evidence that her impairments meet or equal a Listing. *Hoopai v. Astrue*, 499 F.3d 1071, 1074

10   (9th Cir. 2007); *Burch*, 400 F.3d at 683.

11        Here, to meet the mental disorders listing at issue (i.e., Listing 12.04), Plaintiff must

12   demonstrate that he fulfills the requirements of both Paragraph A and B or both Paragraph A and

13   C:

14        Paragraph A of each listing . . . includes the medical criteria that must be present in [the
          plaintiff's] medical evidence. Paragraph B of each listing . . . provides the functional
15        criteria [assessed], in conjunction with a rating scale . . . to evaluate how [the plaintiff's]
          mental disorder limits [her] functioning [in four areas (i.e., the ability to (1) understand,
16        remember or apply information; (2) interact with others; (3) concentrate, persist or
          maintain pace; and (4) adapt or manage oneself)] . . . . To satisfy the paragraph B criteria,
17        [a plaintiff's] mental disorder must result in "extreme" limitation of one, or "marked"
          limitation of two, of the four areas of mental functioning . . . . Paragraph C of Listings . . .
18        12.04 [and] 12.06 provides the criteria [used] to evaluate "serious and persistent mental
          disorders" [i.e.,] when there is a medically documented history of the existence of the
19        mental disorder . . . over a period of at least 2 years . . . and [1] [a plaintiff relies] on an
          ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or
20        a highly structured setting(s), to diminish the symptoms and signs of [the] mental
          disorder[; and 2] when the evidence shows that, despite [a plaintiff's] diminished
21        symptoms and signs, [the plaintiff has] achieved only marginal adjustment. "Marginal
          adjustment" means that adaptation to the requirements of daily life is fragile; that is, [the
22        plaintiff has] minimal capacity to adapt to changes in [the plaintiff's] environment or to
          demands that are not already part of [the plaintiff's] daily life.
23

24   20 C.F.R. § Pt. 404, Subpt. P, App. 1.

25        Here, Plaintiff has not met his burden. *Burch*, 400 F.3d at 683 (noting that the plaintiff

26   bears the burden to show that his impairments meet the requirements of a Listing). While the

27   Court empathizes with the facts that Plaintiff has suffered physically and psychologically (and is

28

1   representing himself in this case), his arguments claiming that the record supports finding his

2   mental health impairments meet the criteria for Listing 12.04 are unsuccessful. This is so for

3   several reasons.

4          First, while Plaintiff is correct that Dr. Franza determined that he has a severe mental

5   illness (SMI), such a diagnosis, on its own, is not sufficient to establish disability under the

6   Listings. And, it appears from Plaintiff's briefs, that he is relying almost exclusively on Dr.

7   Franza's SMI determination to argue that he meets the 12.04 Listing requirements. But, as the

8   Ninth Circuit has held, the "mere diagnosis of an impairment listed in Appendix 1 is not sufficient

9   to sustain a finding of disability" *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985), nor is a

10  "generalized assertion of functional problems" sufficient to establish disability at step three.

11  *Tackett*, 180 F.3d at 1100 (citation omitted).

12         Second, Plaintiff has failed to present "any evidence which would support the diagnosis

13  and findings of a listed impairment." *Burch*, 400 F.3d at 683. While Dr. Franza did opine that the

14  "records obtained coupled with a face-to-face meeting and available records suggest [Plaintiff]

15  seems to experience significant and ongoing decline in functioning due to co-morbidities that

16  include a minimum of two SMI [severe mental illness] qualifying diagnoses[,]" his opinion does

17  not explain what the "decline in functioning" means nor does it provide any context for this

18  significance in decline vis-à-vis obtaining and maintaining a job. Additionally, Dr. Franza notes

19  that the "diagnoses contained in this document are for SMI determination purposes only" and, it

20  is unclear to this Court, what an individual must demonstrate to obtain a SMI determination. ECF

21  No. 29-2 at 64. Finally, his opinion does not delve into Plaintiff's functional limitations.[11] *See id.*

22  at 63.

23         Further, there is, as the ALJ noted, substantial evidence in the record supporting that

24  Plaintiff's "symptoms are controlled with medication when he is compliant." ECF No. 29-2 at 32.

25  For example, progress notes from Christine Hayes, MS, LAC, BHP provide that "Abilify 'is

26

27         [11] While Dr. Franza writes, in his December 2016 opinion, that Plaintiff "has not been able to attain
    independent housing, employment, and stable interpersonal and overall social relationships[,]" he does not explain
28  why this is the case nor does he explain whether these issues will continue to exist and to what extent. ECF No. 29-2
    at 63.

working pretty well, my moods are pretty calm, my anxiety went way down'" and, when he ran out of Abilify, his symptoms worsened. *Id*. at 121. In his psychological evaluation with state agency psychologist Rick Webster, Plaintiff stated that his medications "[k]eep me low toned, anger under control, and voices decrease." *Id*. at 227. And in a psychiatric follow-up with Linda Lay, he stated that "he had been doing well on medications until he ran out and now has been feeling down and anxious." *Id*. at 416.

Additionally, Plaintiff's mental status exams reveal "good" concentration, "logical" coherent" thought process, "fair" judgment, "fair" insight, and "age[-]appropriate" fund of knowledge and memory. *See, e.g., id.* at 101, 107, 122, 316, 319. Further, Ms. Hayes' progress notes indicate that Plaintiff's "identified needs" are to "build self[-]confidence and feel calm." *See, e.g., id.* at 119. And progress notes by Samuel Mays, BHT provide that Plaintiff's barriers to progress are "NA." *See id.* at 300, 302.

Additionally, while Plaintiff argues that his SMI determination coupled with his two-years of treatment are sufficient to meet the Paragraph C criteria, the Court disagrees. This is because while Plaintiff has received mental health treatment for a period of over two years, despite gaps that could be explained by his mental health impairments, lack of transportation, or insurance coverage difficulties, he has *not* shown that he has achieved only marginal adjustment (i.e., "adaptation to the requirements of daily life is fragile; that is, [the plaintiff has] minimal capacity to adapt to changes in [the plaintiff's] environment or to demands that are not already part of [the plaintiff's] daily life."). 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Further, with respect to the Paragraph B criteria, none of the medical opinions that the ALJ found persuasive opined that Plaintiff had any extreme or marked limitations.[12] *See* ECF No. 29-1 at 30, 32.

---

[12] Plaintiff disputes the claim that he did not have to have questions repeated during his psychological evaluation with state agency Dr. Webster. ECF No. 39 at 8. Even when crediting Plaintiff's claim, aside from one progress note from Ms. Hayes (ECF No. 29-2 at 158) noting that Plaintiff was unable to recall several words after a five-minute delay and with prompting and Dr. Doust's unsupported and unexplained opinion indicating that Plaintiff has difficulties with concentration (ECF No. 29-1 at 414), the record supports no extreme or marked limitation with respect to concentration or recall.

Finally, a district court may not substitute its judgment for that of the Commissioner's. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This is to mean that if the evidence in the record "is susceptible to more than one rational interpretation, [the reviewing court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). And, as noted above, the ALJ's step-three findings are supported by substantial evidence in the record.

### b. Whether the ALJ properly assessed the opinion of Plaintiff's treating physician Matthew Doust

#### i. Dr. Doust's opinion

Dr. Matthew Doust, a pain management specialist, treated Plaintiff for "lumbar and cervical chronic pain" beginning in October 2016. ECF No. 29-1 at 405. ECF No. On June 27, 2017, he completed a Residual Functional Capacity Questionnaire for the cervical spine and one for the lumbar spine. *Id*. at 405-409; 410-412. That same day, he also completed a Physical Capacities Evaluation. *Id*. at 413-414.

He opined that Plaintiff, with respect to his cervical spine, could sit, stand, and walk for about two hours in an eight-hour day "depend[ing] on [his] symptoms." *Id*. at 407. He also opined that Plaintiff, with respect to his lumbar spine, could sit for one-to-two hours and stand or walk for about two-to-three hours in an eight-hour day. *Id*. at 411. Dr. Doust also noted that Plaintiff could occasionally lift and carry 5-to-20 pounds with respect to his lumbar spine, but rarely or never lift and carry more than 10 pounds with respect to his cervical spine. *Id*. at 408, 411. He further found that Plaintiff had no limitations with reaching, handling, or fingering. *Id*. at 408; *see also id*. at 413.

Additionally, Dr. Doust noted that Plaintiff suffered from fatigue and headaches. *Id*. at 405, 412. He also opined that Plaintiff had "moderately severe" restrictions with respect to attention and concentration; maintaining interpersonal relationships with supervisors, co-workers, or the public; responding to customary work pressures or stress; and providing consistent work effort. Finally, Dr. Doust opined that Plaintiff would suffer from "good" and "bad" days and, as a result of his impairments, miss more than four days of work per month. *Id*. at 409, 414.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ii. The ALJ's decision**

The ALJ rejected Dr. Doust's opinions in the Residual Functional Capacity Questionnaires, arguing, without elaboration, that the physician's responses contradicted each other. ECF No. 29-1 at 38. The ALJ noted that he did consider Dr. Doust's opinions provided in the Physical Capacities Evaluation "because it considers the whole person." *Id*. That said, he, nonetheless, rejected all but one of Dr. Doust's opinions cited in the Physical Capacities Evaluation. *Id*. at 40.

**iii. The parties' arguments**

Plaintiff argues that the ALJ should have given greater weight to the opinion provided by his treating physician Dr. Doust. ECF No. 31 at 3-4. If the ALJ had done so, then, according to Plaintiff, the ALJ would have found that Plaintiff meets the Paragraph B criteria of Listing 12.04. *Id*. at 1-4. Plaintiff further appears to complicate the ALJ's reasoning for giving greater weight to the one-time state consulting doctor than Plaintiff's treating physician, noting that the state agency doctor is a neurologist whereas his treating physician's specialty is the spine, which is an "area of concern for Plaintiff's impairment." *Id*. at 3. Finally, Plaintiff argues that he has "continued treatments for his disabilities to the maximum extent possible[,]" but factors like changes in insurance providers, moving to Las Vegas, and COVID-19 have impeded and created gaps in treatment. *Id*. at 4.

The Commissioner counters that the ALJ properly discounted Dr. Doust's opinion because the treating physician "lacked a longitudinal understanding of Plaintiff's medical condition"[13] and provided his opinion in an "unexplained, check-the-box form[.]" ECF No. 38 at 17. She also argues that the Court should affirm the ALJ's decision because he "made specific findings supported by specific evidence, and the record does not compel an interpretation that differs from the ALJ's findings[.]" *Id*.

---

[13] The Court does not follow this argument, as (1) the Commissioner argues that the ALJ was proper in assigning greater weight to one-time examining doctors (Dr. Hunter and Dr. Webster), and (2) Dr. Doust treated Plaintiff for at least about eight months and appears to have requested his prior medical records. See ECF No. 29-1 at 410, ECF No. 29-2 at 34 ("At this time, [Plaintiff's] history, physical examination, pertinent radiographic findings, and outside medical records have been reviewed in depth with the patient."), 346.

Plaintiff replies that the ALJ's findings are "supported only by [c]onsultative [e]valuations and [r]ecord [r]eviews[,]" but not "treating source records and opinions[.]" ECF No. 39 at 14.

### iv. Whether the ALJ provided "specific and legitimate" reasons for discounting the opinion of treating physician Dr. Matthew Doust

The Ninth Circuit classifies medical opinions into three hierarchical categories: (1) treating physicians (i.e., those who treat the plaintiff), (2) examining physicians (i.e., those who examine but do not treat the plaintiff), and (3) non-examining physicians (i.e., those who do not treat or examine the plaintiff).[14] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2008) ("Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.").

An ALJ may reject a treating physician's uncontradicted opinion by providing "clear and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If, however, a treating physician's opinion is contradicted, the ALJ may only reject it with "specific and legitimate" reasons supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 628 (9th Cir. 2007). This means that the ALJ "'must do more than offer his conclusions; he must set forth his own interpretations and explain why they, rather, than the doctor['s], are correct.'" *Belanger v. Berryhill*, 685 Fed. App'x 596, 598 (9th Cir. 2017). This is a necessary step so that the reviewing court does not speculate as to the basis of the findings when determining whether substantial evidence supports the ALJ's decision.

---

[14] The SSA changed the framework for how an ALJ must evaluate medical opinion evidence for claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, Plaintiff applied for benefits on December 22, 2016. ECF No. 29-1 at 314–20; 321–29. This would, therefore, make the old regulations discussed above applicable to Plaintiff's claims. 20 C.F.R. § 404.1520c ("For claims filed before March 27, 2017, the rules in § 404.1527 apply.").

1    Here, the "specific and legitimate" standard applies because Dr. Doust, a treating

2    physician, provided an opinion that was contradicted by state non-examining doctors.[15] *Orn*, 495

3    F.3d at 628. And, as discussed below, the Court finds that the ALJ did not commit a non-harmless

4    error in rejecting Dr. Doust's opinion, as he provided "specific and legitimate" reasons supported

5    by substantial evidence in the record for doing so.

6    The ALJ rejected all but one of Dr. Doust's opinions provided in the Physical Capacities

7    Evaluation. ECF No. 29-1 at 38. According to the ALJ, only Dr. Doust's opinion regarding

8    Plaintiff's need to "avoid exposure to chemicals and pulmonary irritants such as smoke, dust,

9    fumes, odors, gases and poorly ventilated areas due to his asthma and that he must avoid

10    concentrated exposure to hazardous machinery, unprotected heights and operational control of

11    moving machinery due to his spine disorder and medications" was "reasonable." *Id*. at 40.

12    The ALJ assigned "little weight" to the treating physician's opinion regarding Plaintiff's

13    "sitting, standing and walking limitations because they are an overestimate of the claimant's

14    limitations based on the objective evidence." *Id*. Given the generally unremarkable cervical spine

15    and lumbar spine X-rays[16] and no additional objective evidence supporting such limitations, this

16    was a "specific and legitimate" reason supported by substantial evidence in the record.

17

18    [15] Dr. Doust's opinion was also contradicted by one-time consulting doctor Gregory James Hunter. The ALJ

19    assigned the greatest weight to Dr. Hunter's *unsigned* opinion. According to the ALJ, Dr. Hunter provided a consultative neurological examination and opined that Plaintiff could "stand and/or walk 6 to 8 hours, and sit for 6 to

20    8 hours in an 8-hour workday . . . ." ECF No. 29-1 at 37. The record, however, shows that Dr. Hunter opined that Plaintiff could stand and/or walk for six-to-eight hours in an eight-hour workday but could sit for only six hours in an

21    eight-hour workday. ECF No. 29-2 at 237-38. Additionally, it appears, as Plaintiff's non-attorney representative appeared to raise at his hearing (ECF No. 29-1 at 61), that the ALJ could not consider Dr. Hunter's opinion because it was not signed. Title 20 C.F.R. § 404.1519n requires that all consultative examination reports be "personally

22    reviewed and signed by the medical source who actually performed the examination." Neither Plaintiff nor the Commissioner raise this issue in their briefs.

23    "Although no Ninth Circuit case has addressed the issue, cases in other jurisdictions have interpreted this regulation as preventing an ALJ from considering an unsigned medical report." *Bergfeld v. Barnhart*, 361 F. Supp. 2d

24    1102, 1111 (D. Ariz. 2005) (citing *Scott v. Shalala*, 898 F.Supp. 1238, 1251 (N.D.Ill.1995) (holding that an ALJ cannot rely on an unsigned medical report from a consultative physician) (also citing *Rogers v. Massanari,* 226

25    F.Supp.2d 1040 (E.D. Mo. 2002) (same)). Even so, Dr. Doust's opinion is still contradicted by the reviewing state doctors, and the ALJ's non-disability determination remains supported by substantial evidence independent of Dr. Hunter's opinion.

26    [16] A progress note from Dr. Doust's The Pain Center of Arizona dated November 10, 2016 provides that

27    Plaintiff's "lumbar spine x-rays are unremarkable and his cervical spine x-ray shows straightening of the normal lordosis on the lateral film and rudimentary cervical ribs at C7 bilaterally." ECF No. 29-2 at 28; *see also id*. at 410–

28    11. Another progress from The Pain Center of Arizona dated June 5, 2017 reads, "I did review the x-rays with the patient of the cervical and lumbar which are negative." ECF No. 29-2 at 349.

1    The ALJ also discounted Dr. Doust's opinion because he found that the treating

2    physician's statements about Plaintiff missing more than four days of work per month and

3    Plaintiff's symptoms and side effects causing a "moderately severe" limitation on Plaintiff's

4    ability to pay attention and concentrate on tasks; maintain interpersonal relationships with

5    supervisors, co-workers, or the public; respond to customary work pressures or stress; and

6    provide consistent work effort were "inconsistent with Dr. Doust's conservative treatment, and

7    the claimant's failure to attend physical therapy or undergo injections." *Id*. at 40. These are

8    "specific and legitimate" reasons supported by substantial evidence in the record.

9    While Plaintiff did attend "approximately 3 sessions"[17] of physical therapy, he failed to

10   continue with the prescribed treatment, which, per Dr. Doust and his team, was required to obtain

11   a lumbar spine MRI and, if necessary, undergo injections. ECF No. 29-2 at 360 (Plaintiff "had

12   approximately 3 sessions of physical therapy at ATI and was not happy there so they recently

13   switched him to Spooner . . . . We are unable to have an MRI of his lumbar spine without him

14   completing physical therapy and then therefore being able to move forward with his injections.").

15   As a result, Dr. Doust's treatment of Plaintiff was limited to ordering cervical and lumbar spine

16   X-rays, which were, as noted above, generally unremarkable and providing pain medication,

17   which Plaintiff admitted, on April 25, 2017, as "amerliorat[ing] his pain to the point where he

18   feels he is [sic] a satisfactory quality of life."[18] ECF No. 29-2 at 354. Such conservative treatment

19   is a "specific and legitimate" reason for discounting Dr. Doust's opinion that Plaintiff is unable to

20   perform *any* work. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (noting that an

21

22   [17] The record indicates that Plaintiff explained his need to not complete the recommended physical therapy sessions, while in Arizona, because he needed to undergo "extensive dental restorations." ECF No. 29-2 at 354. But the record shows that the even after the dental work was completed in May and June 2017 (ECF No. 29-2 at 379),

23   Plaintiff did not yet attend physical therapy. And while the record does support Plaintiff's contention that he had difficulties obtaining treatment and prescriptions due to insurance barriers, these barriers seemed limited to

24   prescriptions and connecting with certain primary care physicians. *See, e.g., id.* at 97, 118, 131, 267. Plaintiff also explained that he had not yet started physical therapy because "he does have a lot of other doctor visits and[,] once

25   those are cleared up[,] he will then call." *Id*. at 349. Of note, Plaintiff received another referral for physical therapy once he moved to Nevada. This referral, which is dated February 27, 2019, was for three sessions per week for four

26   weeks. *Id*. at 395. The record does not show that Plaintiff completed any of the prescribed physical therapy sessions in Nevada.

27   [18] A progress note from The Pain Center of Arizona dated November 10, 2016 provides that Plaintiff would be "scheduled with Dr. Doust for lumbar medial branch blocks without sedation[,]" but there is no evidence in the

28   record that this treatment occurred. ECF No. 29-2 at 29.

1    ALJ may discount a doctor's opinions when they are inconsistent with or unsupported by the

2    doctor's own clinical findings).

3            The Court is concerned with the ALJ's dismissal of Dr. Doust's opinions in the cervical

4    spine Residual Functional Capacity Questionnaire and the lumbar spine Residual Functional

5    Capacity Questionnaire on grounds that the questionnaires contradict each other. ECF No. 29-1 at

6    39. The Court's concern stems from the fact that the ALJ failed to provide any elaboration or

7    citation to the record. *Id*. While the Commissioner attempts to (unsuccessfully) explain how these

8    questionnaires contradict each other, the Commissioner also is aware that the Court can only rely

9    on the arguments that the ALJ invoked in making his decision. *See Orn*, 495 F.3d at 630; *Stout*,

10   454 F.3d at 1054. Nonetheless, despite the ALJ's conclusory dismissal of Dr. Doust's opinions in

11   the two questionnaires, this was a harmless error. *Molina,* 674 F.3d at 1117 (An error is harmless

12   if it is "'inconsequential to the ultimate nondisability determination.'") (quoting *Carmickle v.*

13   *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). This is so because the ALJ did

14   provide "specific and legitimate" reasons to discount the treating physician's opinion provided in

15   the Physical Capacities Evaluation, and the Physical Capacities Evaluation required an analysis of

16   Plaintiff's entire person (not just a single body part like the cervical spine) and included many of

17   the same questions that were posed in the two rejected questionnaires.

18           Accordingly, the ALJ erred with respect to one of his reasons for discounting the opinion

19   of treating physician Dr. Doust (i.e., discounting the two Residual Functional Capacity

20   Questionnaires), but this error was harmless. Additionally, the ALJ's other reasons for

21   discounting Dr. Doust's opinion are "specific and legitimate" reasons supported by substantial

22   evidence in the record.

23                   **c.  Whether substantial evidence supports the ALJ's non-disability finding**

24           The Court reviewed the entire record and finds that substantial evidence supports the

25   ALJ's conclusion that Plaintiff is not disabled. Significantly, while Plaintiff's treating physician

26   Dr. Doust opined that Plaintiff is disabled from all work, Dr. Doust's own progress notes and

27   treatment relating to Plaintiff's chronic cervical and lumbar spine pain (limited to pain medication

28

and approximately three physical therapy sessions[19]) do not support this opinion nor does the record. Additionally, no other medical provider, aside from Dr. Doust whose findings have been problematized, opined that Plaintiff is unable to perform any work. *See Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993); *Curry v. Sullivan*, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990). Additionally, the vocational expert testified that a person with the residual functional capacity the ALJ found to exist could perform certain light jobs existing in significant numbers in the national economy.

### III.     CONCLUSION AND ORDER

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand (ECF Nos. 31, 33) is DENIED.

**IT IS FURTHER ORDERED** that the Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF Nos. 37, 38) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to close this case.

DATED: December 14, 2021.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

---

[19] Dr. Doust did not perform the physical therapy; rather, he referred Plaintiff to attend physical therapy once or twice a week for six weeks.